## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

STANLEY J. CATERBONE,       :
    Plaintiff,           :
                           :
    v.                    :       CIVIL ACTION NO. 22-CV-1574
                           :
PNC BANK,               :
    Defendant.          :

## <u>MEMORANDUM</u>

**SCHMEHL, J. /s/ JLS**                               **JULY 12, 2022**

On April 22, 2022, Plaintiff Stanley J. Caterbone, a frequent *pro se* litigant in this Court,[1] emailed the Clerk of Court a 368-page submission.  Although this submission was deficient as a complaint in a civil action in a number of respects, in an abundance of caution, the Clerk of Court treated it as a Complaint, opened a civil action, and assigned the matter to the undersigned for review.  Because it was not clear to the Court that Caterbone, by emailing the submission, intended to initiate a federal lawsuit, the Court entered an Order on May 4, 2022 (ECF No. 8) requiring further filings from Caterbone consistent with the Federal Rules of Civil Procedure and the relevant statutes.  He was also directed to pay the filing fee for the case or submit a completed application for leave to proceed *in forma pauperis*.

Thereafter, Caterbone emailed to the Clerk of Court a 165-page "Emergency Injunction for Stay" containing the caption for this case.  (ECF No. 13.)  While this pleading set forth allegations, it was not signed as required by Federal Rules of Civil Procedure 11.  On June 2, 2022 he emailed another 133-page "Emergency Injunction for Stay" that was also unsigned.

---

[1] *See Caterbone v. Lancaster City Police Dep't*, No. 21-5683, 2022 WL 170642, at *1 (E.D. Pa. Jan. 19, 2022) (noting that between 2005 and the filing of that case, Caterbone had filed at least 26 civil cases and habeas petitions *pro se* in this Court).

(ECF No. 14.)  In an Order filed on June 23, 2022, Caterbone was directed to sign his pleadings and again directed to submit a Motion to proceed *in forma pauperis*.  On July 29, the Court received a Motion to Proceed *In Forma Pauperis* that is again unsigned.[2]  (ECF No. 16.)  While Caterbone has failed to submit a signed version of either of his "Emergency" pleadings, to preserve judicial resources and because Caterbone's pleadings disclose no basis for federal question jurisdiction, the Court will screen the pleadings as submitted, dismiss all federal claims, and decline to exercise supplemental jurisdiction over any state law claim.  The case, accordingly, will be dismissed.  However, given Caterbone's continuing pattern of contumacious conduct, the dismissal Order will also include a provision directing him to show cause why the Court should not enjoin him from filing unsigned pleadings in the future.

## I.    FACTUAL ALLEGATIONS

While the allegations in Caterbone's original Complaint (ECF No. 1) were lengthy, rambling, and at times detached from reality, briefly recounted, he appeared to seek to sue PNC Bank over an incident that occurred at one of its branches where he maintains accounts and safety deposit boxes.  His submission revealed that his bank account at PNC Bank was to be

---

[2] For reasons that are completely unclear, Caterbone has engaged in a course of conduct that can only be described as contumacious to the directives contained in Orders of this Court. He has repeatedly submitted unsigned pleadings and pleading that do not comply with Rules 8 and 10 of the Federal Rules of Civil Procedure.  The Court's Order of June 23, 2022 (ECF No. 15) again informed Caterbone that unsigned pleadings are not acceptable, and warned him that every pleading he submitted to the Court had to contain a handwritten signature.  Rather than follow this simple directive, each of the submissions Caterbone emailed to the Clerk of Court thereafter failed to contain a handwritten signature.  (*See* ECF Nos. 16, 17.)  This is not the only case in which Caterbone has submitted unsigned pleadings or submitted pleadings with an unauthorized electronic signature.  A cursory review of Caterbone's recent prior cases indicate the following documents were submitted without compliance with Rule 11:  Civil Action 21-5683, ECF Nos. 3, 7, 10, 13; Civil Action 20-1951, ECF Nos. 1, 7, 11, 12, 14, 16, 17, 18, 20-1, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 34, 36; Civil Action 18-4222, ECF No. 2.

closed as of April 27, 2022 because he allegedly "engaged in inappropriate and disruptive behavior towards employees of PNC Bank. . . .   Accordingly, PNC Bank has made a business decision to close the above-referenced retail deposit account. . . .   PNC will no longer provide you with banking services related to the above-referenced Account. . . .   Please note:  this decision is final."  (ECF No. 1 at 24.)  The lease on a safety deposit box was also to be canceled. (*Id*.)  Caterbone also submitted copies of his bank statements from PNC.  Apparently, he had accused PNC of engaging in fraud and extortion, although the bases of the accusations were unclear.  (*Id*. at 36-37, 44-45.)

In response to the Court's first Order directing him to refile his pleading in a form that satisfied Federal Rules of Civil Procedure 8 and 10, Caterbone returned with his 165-page "Emergency Injunction for Stay" containing the caption for this case.  (ECF No. 13.)  Two weeks later, he filed a substantially identical copy of the same pleading.[3]  (ECF No. 14.) Although unsigned, the Court will deem Caterbone's "Emergency Injunction for Stay" (ECF No. 13) to constitute an Amended Complaint ("Am. Compl.") and will screen the allegations pursuant to 28 U.S.C. § 1915(e)(2)(B).

Caterbone asserts that he has held safety deposit boxes and a checking account at the Millersville and Duke Street branches of PNC Bank for at least three years.  (Am. Compl. at 2.) He visits the branches to use his safety deposit boxes several times each week to replace back-up computer drives with current back-up drives in an effort "to thwart the computer hacking and

---

[3] ECF No. 13 is nearly identical to ECF No. 14.  The apparent difference is that, at the end of ECF No. 13 Caterbone states "So tomorrow night at Midnight my Social Security Disability Check . . . will official be extorted; and you all think it is no big deal – Kiss My Ass." (ECF No. 13 at 125.)  ECF No. 13 also includes a page apparently invoking the federal RICO statute, although there are no allegations to support the elements of such a claim.  (ECF No. 13 at 126.)

modification/deletion of court files by perpetrators and computer hackers." (*Id*.) In February 2022, Caterbone became aware of several transactions posted to his account totaling $99.45 that he claims caused "over-charge and fraud/extortion" of $211.86. (*Id*.) He wrote a letter to the Duke Street branch about the charges on February 27, 2022. (*Id*. at 3.) He asserts that "days later the letter was seen laying in plain sight in the safety deposit room" of the bank "in order to HARASS Pro Se Plaintiff Stan J. Caterbone, a form of psychological warfare." (*Id*. at 3 (capitalization in original).) He allegedly posted additional letters and made phone calls to the branch, but this "yielded nothing but badgering, lying and harassment." (*Id*.) He then met in person on March 2, 2022 with the manager of the Millersville branch that "again yielded nothing but in-person badgering, lying and harassment." (*Id*.)

On March 29, 2022, Caterbone received a "Notice of Account Closure" from a representative of Defendant PCN Bank. (*Id*. 3-4.) The letter asserts that because Caterbone had "engaged in inappropriate and disruptive behavior towards employees of PNC Bank . . . PNC has made a business decision to close the above-referenced retail deposit account [and] will no longer provide you with banking services." (*Id*. at 4.) Caterbone was directed to destroy all unused checks for the account and cease making deposits. Any debit card associated with the account was deactivated. Caterbone was also directed to divert direct deposits to another financial institution. The leases on his safety deposit boxes were also canceled and he was directed to remove the contents and surrender the keys within fifteen days. (*Id*.) Caterbone received another notice of account closure on April 2, 2022. (*Id*.)

Caterbone alleges he was locked out of the mysocialsecurity.com website on April 1, 2022 when he attempted to enter a new phone number attached to the account. He asserts that in February "a perpetrator shut down [his] ATT Phone Service [and] a new phone had to be

purchased from another carrier." (*Id*.)  He allegedly received a letter from the Social Security Administration granting him access to his account, "however there were no solutions or methods to request paper checks" – apparently as a replacement for his direct deposit into the PNC account.  (*Id*.)  Caterbone asserts "the FIX has not been put in place for the COINTELPRO dirty trick due to the fact that the April 20, 2022 Social Security Disability Benefit of [deleted] will be DIRECT DEPOSITED into the PNC Account and [he] cannot change this due to the fact that it takes some months to change deposit institutions with the Social Security Administration."  (*Id*. (capitalization in original).)  He goes on to describe a trip to visit to a Social Security Office on April 4, 2022, calls to the Lancaster County Social Security Office on April 18, 2022, and his attempt to open an account at another bank where he was refused service.  (*Id*. at 4-7.)  He was also informed by PNC staff that the amount of his social security benefit for April would be sent to him via a certified check.  (*Id*. at 7.)

The balance of Caterbone's allegations concern allegations of torture by the use of microwave weapons to hijack his brain, which allegedly causes "Havana Syndrome" and that have been used against him since he became a federal whistleblower in 1987.  (*Id*.)  While PNC Bank is the only named Defendant, Caterbone alleges wide-spread corruption in the City of Lancaster and in its police department, ongoing COINTELPRO surveillance, break-ins, computer hacking, stalking, harassment, false arrests, false imprisonment, and psychological warfare with gaslighting on a daily basis.  (*Id*.)  He describes events from 2010 involving Fulton Bank (*id*. at 8-12), and a chronology dating from 1904 of harassment of his family and himself by government officials (*id*. 14-118).  He also lists several pages of incidents where he has been accused of illegal trespassing (*id*. 119-121), and a list of allegedly false arrests from 1987 to 2007 (*id*. at 122-123).  Finally, he attaches a copy of a mostly blank application he apparently

filed with the Pennsylvania Board of Pardons seeking to commute his parole on his state convictions for stalking/repeatedly committing acts to cause fear, reckless endangerment, and simple assault in the case of *Commonwealth v. Caterbone*, CP-36-CR-6520-2017.  (ECF No. 13-3.)  As noted, at the end of his pleading he invokes the RICO statute but makes no allegations about the elements of that claim.[4]  (ECF No. 13-3 at 17.)

## II.   STANDARD OF REVIEW

Caterbone is granted leave to proceed *in forma pauperis*.  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the pro se] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

Furthermore, the Court must review the pleadings and dismiss the matter if it determines, *inter alia*, that the action fails to set forth a proper basis for this Court's subject matter jurisdiction.  Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-

---

[4] Caterbone also separately filed an unsigned document (ECF No. 17) purporting to list the value of various personal property that has been vandalized or stolen.  The connection to his allegations against PNC is unexplained.

matter jurisdiction, the court must dismiss the action."); *Group Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*").  A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction.  *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence." (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006))).  As Caterbone is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III.    DISCUSSION

### A.    Claims Under Federal Law

Caterbone invokes the Racketeer Influenced and Corrupt Organizations Act ("RICO") by name on the last page of his pleading.  This is the only reference to a federal claim.  RICO "makes it unlawful 'for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.'"  *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 362 (3d Cir. 2010) (quoting 18 U.S.C. § 1962(c)).  To state a civil RICO claim, a plaintiff must plausibly allege the following elements:  "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Id.* (internal quotations omitted).  "In order to have standing to litigate a civil RICO claim, a plaintiff must show that [he] suffered an injury to [his] business or property and that the injury was proximately caused by the defendant's racketeering activities."  *Miller v. Pocono Ranch Lands Prop. Owners Ass'n Inc.*, 557 F. App'x 141, 145 (3d Cir. 2014) (*per curiam*).  To

the extent Caterbone is raising RICO claims, his attempt to do so by invoking the name of the

statute constitutes nothing more than a conclusory allegation wholly unsupported by factual

allegations supporting the conduct, enterprise, pattern, racketeering activity, and injury elements.

Accordingly, Caterbone has failed to allege a plausible basis for standing to bring a RICO claim,

as well as state a plausible RICO claim.  Nor can the Court discern any other plausible basis for a

claim based on Caterbone's submissions.[5]

---

[5] Moreover, federal courts routinely dismiss allegations that the CIA, FBI, NSA, and other governmental agencies or officials are targeting individual citizens with the intention to track, surveil, monitor, attack, or torture these individuals with directed energy weapons, microwave radiation, satellite technology, and the like as factually frivolous under § 1915, finding that these allegations are fanciful, fantastic, delusional, irrational, or wholly incredible. *See, e.g.*, *McGinnis v. Freudenthal,* 426 F. App'x 625, 628 (10th Cir. 2011) ("Mr. McGinnis' claims of electromagnetic torture [by government and prison officials] are delusional and unsupported by any factual basis.  The district court did not abuse its discretion in dismissing these claims as frivolous."); *Price v. Fed. Bureau of Investigation*, No. 20-3015, 2020 WL 4368063, at *3 (E.D. Pa. July 30, 2020), *aff'd*, 845 F. App'x 106 (3d Cir. 2021) (finding plaintiff's allegations to be factually frivolous where plaintiff asserted that "numerous law enforcement agencies, attorneys, prison officials, and medical professionals have used neurological and psychological technology to control the 'four basic groups of his brain and mental functions' and "that the use of this 'technology' and 'mind control' has caused him numerous impairments and drove him to criminal and erratic behavior"); *Nduka v. Williams*, 410 F. Supp. 3d 719, 721-722 (E.D. Pa. 2019) (finding *pro se* plaintiff's allegations of "the existence of a wide-reaching conspiracy among various rappers, producers, and their 'affiliates' specifically designed to thwart his success in the music industry by hacking devices and engaging in a social media campaign to taunt [plaintiff]" were wholly incredible and warranted dismissal as factually frivolous pursuant to § 1915(e)(2)(B)(i)); *Brown v. United States*, No. 19-154, 2019 WL 3753193, at *2-*5 (E.D.N.C. May 10, 2019), *report and recommendation adopted*, 2019 WL 3783271 (E.D.N.C. Aug. 12, 2019) (dismissing *pro se* plaintiff's claims that the "United States is attacking him with satellite directed energy weapons" pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) because it lacked an arguable basis in fact and rose to the level of the irrational or the wholly incredible); *Rhodes v. Fed. Bureau of Investigation*, No. 16-0093, 2017 WL 1021314, at *4 (N.D. Ind. Mar. 16, 2017) ("the remainder of Rhodes's complaint, which references unspecified actions allegedly taken by unidentified FBI agents related to harassment, torture (using 'directed energy weapons'), theft, destruction of property, defamation, civil rights violations, attempted murder ('by forced suicide'), and misconduct, suggests that any FOIA claims regarding these allegations are frivolous because "the facts alleged rise to the level of the irrational or wholly incredible."); *cf. Terry v. United States*, 2014 WL 5106984, *1-2 (C.D. Cal. 2014) (allegations in paid complaint that NSA and others were using directed energy weapons to

### B.      Claims Under State Law

Because the Court has dismissed the RICO claim and there are no other non-frivolous

federal law claims apparent in Caterbone's pleading, the Court will not exercise supplemental

jurisdiction under 28 U.S.C. § 1367(c) over any state law claims.  Accordingly, the only

independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a

district court jurisdiction over a case in which "the matter in controversy exceeds the sum or

value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,'

even though only minimal diversity is constitutionally required.  This means that, unless there is

some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any

defendant.'" *Lincoln Ben. Life Co.*, 800 F.3d at 104 (quoting *Lincoln Prop. Co. v. Roche*, 546

U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010)

(internal footnotes omitted)).  An individual is a citizen of the state where he is domiciled,

meaning the state where he is physically present and intends to remain.  *See Washington v.

Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011).  A national banking association is a citizen of

the State designated in its articles of association as its main office.  *See Wachovia Bank v.

Schmidt*, 546 U.S. 303, 318 (2006).

It is the plaintiff's burden to establish diversity of citizenship.  *See Gibbs v. Buck*, 307

U.S. 66, 72 (1939); *Quaker State Dyeing & Finishing Co., Inc. v. ITT Terryphone Corp.*, 461

F.2d 1140, 1143 (3d Cir. 1972) (stating that, in diversity cases, the plaintiff must demonstrate

---

send voices into plaintiff's head were "frivolous, delusional and fanciful" and did not confer
subject matter jurisdiction on the court).

complete diversity between the parties and that the amount in controversy requirement has been met); *Jackson v. Rosen*, C.A. No. 20-2842, 2020 WL 3498131, at *8 (E.D. Pa. June 26, 2020). Caterbone does not allege the citizenship of the parties. Rather, he provides only Pennsylvania addresses for himself and Defendant PNC, which suggests that diversity is lacking.[6] Accordingly, Caterbone has not sufficiently alleged that the parties are diverse for purposes of establishing the Court's jurisdiction over any state law claims he intends to pursue.

## IV.    CONCLUSION

For the foregoing reasons, the Court will dismiss this case in part with prejudice and in part without prejudice. All federal law claims are dismissed with prejudice and all state law claims are dismissed without prejudice for lack of subject matter jurisdiction. An appropriate order follows that includes the requirement, noted above, that Caterbone must show cause why an injunction should not be entered against him barring him from filing any further unsigned pleadings with the Clerk of Court.[7]

---

[6] The Court may consider matters of public record when conducting a screening under § 1915. *Castro-Mota v. Smithson*, No. 20-940, 2020 WL 3104775, at *1 (E.D. Pa. June 11, 2020) (citing *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)). FDIC reports indicate that PNC Bank is headquartered in Pittsburgh, Pennsylvania. *See* https://www.fdic.gov/resources/resolutions/resolution-authority/resplans/plans/pnc-idi-1807.pdf (stating "PNC Bank, National Association (PNC Bank) is a Main Street, regional bank headquartered in Pittsburgh, Pennsylvania").

[7] Pursuant to the All Writs Act, 28 U.S.C. § 1651(a), a district court may enjoin "abusive, groundless, and vexatious litigation." *Brow v. Farrelly*, 994 F.2d 1027, 1038 (3d Cir. 1993); *see also In re Oliver*, 682 F.2d 443, 445 (3d Cir. 1982). The "broad scope" of this power is limited by "two fundamental tenets of our legal system — the litigant's rights to due process and access to the courts." *Brow*, 994 F.2d at 1038. The United States Court of Appeals for the Third Circuit has held that district courts "must comply with the following requirements when issuing such prohibitive injunctive orders against pro se litigants." *Id.* First, the Court should not restrict a litigant from filing claims "absent exigent circumstances, such as a litigant's continuous abuse of the judicial process by filing meritless and repetitive actions." *Id.*; *see also Matter of Packer Ave. Assoc.*, 884 F.2d 745, 747 (3d Cir. 1989). Second, the Court "must give notice to the litigant to show cause why the proposed injunctive relief should not issue." *Brow*, 994 F.2d

**BY THE COURT:**


**/s/ Jeffrey L. Schmehl**
**JEFFREY L. SCHMEHL, J.**

---

at 1038; *see also Gagliardi v. McWilliams*, 834 F.2d 81, 83 (3d Cir. 1987).  Third, the scope of the injunctive order "must be narrowly tailored to fit the particular circumstances of the case before the [ ] Court."  *Brow*, 994 F.2d at 1038; *see also Chipps v. United States Dist. Ct. for the Middle Dist. of Pa.*, 882 F.2d 72, 73 (3d Cir. 1989).

      Caterbone has demonstrated a continuing pattern of abuse by emailing submissions to the Clerk of Court that do not contain a hand placed signature.  It is unclear why he continues to abuse the judicial process by engaging in this conduct.  Accordingly, this Order provides Caterbone with notice that, unless he can show cause otherwise, an injunction will be entered preventing him from filing unsigned documents in this Court, other than a notice of appeal of the dismissal of this case.  In the event such an injunction issues and Caterbone thereafter files unsigned submissions with the Clerk of Court, the injunction order will instruct the Clerk to return such material to him without filing it, along with a copy of the injunction order.  The scope of such an injunction order will be narrowly tailored to fit the particular circumstances of this case since it will not prevent Caterbone from filing pleadings that comply with Rule 11, and will not prohibit him from filing an appeal in this case.